IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Christine M. Arguello**

Criminal Case No. 17-cr-00334-CMA

UNITED STATES OF AMERICA,

        Plaintiff,

v.

MARCO CASTRO-CRUZ,

        Defendant.

---

**DEFENDANT MARCO CASTRO-CRUZ'S SENTENCING
MEMORANDUM AND MOTION FOR NON-GUIDELINES SENTENCE**

---

COMES NOW, the Defendant Marco Castro-Cruz ("Defendant" or "Mr. Castro-Cruz"), by and through his undersigned counsels Boston H. Stanton, Jr., Esq., and Sean Barrett, Esq., hereby submit the following sentencing memorandum to assist this Court in the resolution of disputed factual and legal issues expected to be raised by the parties at the sentencing hearing currently scheduled to be held on February 5, 2018.

## BACKGROUND

The Defendant Marco Castro-Cruz is an adult male, 38 years old. Prior to his present incarceration, the Defendant resided in Arvada, Colorado. He is a citizen of Mexico. Defendant is in the United States without authorization, and previously has been deported to Mexico. His principal language is Spanish, and he does not speak more than minimal English. The Defendant has two dependents, one son and one daughter.

The prosecution continues to assert Defendant Castro-Cruz has used the alias of "Guero." However, in the Hispanic culture this is a common nickname used by many men. (It is

equivalent to someone in today's American culture referring to a man as "dude.")  Hence, the Defense continues to object to the use in sentencing of any evidence or other information that pertains only to one "Guero."

The Defendant Castro-Cruz has a prior state conviction in 2006 in Arizona for possession of a controlled substance.  As discussed below, the prosecution continues to argue this conviction is a predicate felony that qualifies for a sentencing enhancement here, a position the Defense continues to contest, as discussed further below.

## ARGUMENT

The Defense urges the Court to sentence Defendant Castro-Cruz to twenty years imprisonment for his guilty plea, with credit for time served.  Through his guilty plea, Defendant has accepted responsibility for his conduct.  For the reasons set forth below, the Defense respectfully requests this Court to reject as inapplicable the varying upward sentencing adjustments and enhancements the Probation Officer and Government are demanding.

### The Pre-Sentencing Report Addendum Is Unpersuasive

On January 9, 2018, Josh Roth, the Probation Officer in this matter ("PO"), filed a brief "Addendum" to his Presentence Investigative Report.  (Doc. No. 12.)  In this Addendum, the PO made no effort whatsoever to address in any meaningful way the arguments of the Defense in its detailed "Objections to Presentence Investigative Report" (Doc. No. 9, "Objections to PSIR"), filed on December 28, 2017.  The Addendum merely dismisses repeatedly the Defense's factual arguments without explanation. (Addendum, pp. A-1-2; E.g., PO:  E.g., I am not bound by any Plea Agreement; and (repeatedly) I "respectfully maintain this enhancement is applicable.") (The

Government itself filed no objections to the PSIR.)    This cursory Addendum is hardly a persuasive basis to reject the Defense's sentencing positions.

### An Adjustment for Possessing a Firearm Is Improper

In its never-ending efforts to portray Defendant Marco Castro-Cruz as the modern-day Al Capone, the Government also claims yet another two-level enhancement for possession of a firearm is warranted under U.S.S.G. §2D1.1(b)(1).    The PO concurs.    PSIR, ¶34 p. 10, and Addendum, p. A-1.    However, there is absolutely no basis for this adjustment.    The record is undisputed that when Defendant was arrested on August 23, 2013 and his vehicle was searched, no firearm was found.    Castro-Cruz was arrested only for driving without a license and proof of insurance, and for following too closely.    No firearm was found on Castro-Cruz's possession, nor in his vehicle.    Following this arrest, the Defendant was deported to Mexico.    Similarly, the second time Defendant was arrested on October 14, 2014, during the execution of a search warrant, no weapon was found in the apartment (#3B at 5380 Zuni Street in Denver) in which he was apprehended.

The sole basis for the government's and PO's proposed firearms possession enhancement is that on May 7, 2014, investigators found four firearms when executing a search warrant at an apartment located at 9151 Cyprus Drive in Thornton, Colorado.    Traces of the Defendant's DNA reportedly were found on one of these weapons (a Smith & Wesson 9 mm pistol).[1]    Defendant Castro-Cruz was not present at this apartment during this search (indeed, was in Mexico).    This

---

[1]    The firearms were sent to the Denver Police Crime lab for DNA testing.    Three of the weapons were found to have mixtures of at least three people on them.    One of the weapons was found to have a mixture of at least four persons.    On one of the weapons containing a mixture of at least three persons (a Smith & Wesson 9 mm pistol)., there was a "partial major DNA profile" consistent with the Defendant's DNA profile.    Statistical analysis suggested that the results were "extremely strong support" for the claim that the Defendant's DNA was on the weapon (along with other persons' DNA).    The Defendant's DNA was not found to be consistent with the various persons DNA found on the other weapons.

search and seizure occurred eight months after the Defendant's August 23, 2013 arrest and ultimate deportation.  As the Defense explained in its Objections to the PSIR, nothing in the discovery suggests Defendant Castro-Cruz had any comings-and-goings at the 9151 Cyprus location since his arrest on August 23, 2013, and eventual deportation.  Objections to PSIR, p. 3.

As the Defense's Objections to the PSIR explain, no information suggests law enforcement, codefendants or confidential informants observed Defendant Castro-Cruz to be in possession of a firearm during the conspiracy the government has pursued.  Cases relying on hearsay evidence to uphold a sentencing enhancement have all relied upon officer and confidential informant hearsay.  *E.g.*, *United States v. Bowman*, 926 F.2d 380 (4th Cir. 1991); *United States v. Ogbonna*, 184 F.3d 447 (5th Cir. 1999); and *United States v. Miller*, 910 F.2d 1321 (6th Cir. 1990).  At the sentencing hearing, unless the government is able to offer such testimony − or evidence regarding how the trace DNA came to be on the weapon − it cannot meet its burden of proof to sustain an enhancement for possession of a firearm.

Defendant Castro-Cruz further objects to the Court applying the two-level enhancement pursuant to U.S.S.G. §2D1.1(b)(1) for possession of a dangerous weapon because the Government has the initial burden of proving possession of a weapon for this enhancement by preponderance of the evidence.  *United States v. Pompey*, 264 F.3d 1176, 1180 (10th Cir. 2001).  Specifically, the Government must establish that a temporal and spatial relationship existed between the weapon, the drug trafficking activity, and the defendant.  *Pompey,* 264 F.3d at 1180.  Even if the Government satisfies this initial burden, the Defendant may overcome this burden upon a showing "that it is clearly improbable the weapon was connected with the offense."  *Id.* at 1181.  In a conspiracy case, the Government is not required to prove that a defendant personally

possessed the firearm. *United States v. Smith*, 131 F.3d 1392, 1400 (10th Cir. 1997). A sentencing court may "attribute to a defendant weapons possessed by his codefendants if the possession of a weapon was known to the defendant or reasonably foreseeable by him." *United States v. McFarlane*, 933 F.2d 898, 899 (10th Cir. 1991). No one can foresee what someone would or would not do or engage in after an eight month absence.

### Standard of Proof

The Federal Sentencing Commission recognizes that, because of the impact discrete factual determinations have on the guideline range, "[r]eliable fact-finding is essential to procedural due process and to the accuracy and uniformity of sentencing." USSG Ch.6, Pt.A (intro. comment.) A court may consider any information that "has sufficient indicia of reliability to support its probable accuracy." §6A1.3(a). The commentary to policy statement §6A1.3 leaves to the court's discretion the degree of formality necessary to resolve sentencing disputes. It recognizes that, while "[w]ritten statements of counsel or affidavits of witnesses" may often provide an adequate basis for sentencing findings, "[a]n evidentiary hearing may sometimes be the only reliable way to resolve disputed issues." §6A1.3, p.s., comment. para. 1. The Commission suggests that the standard of proof for sentencing factors is a preponderance of the evidence. §6A1.3, p.s., comment. para. 3. Courts are divided over whether a higher standard may be required if a particular fact determination has a disproportionate effect on the sentence imposed. Particular guidelines may require a higher standard of proof in specific contexts. *See*, *e.g.*, USSG §3A1.1(a) (to increase offense level for hate-crime motivation, court must find supporting facts beyond a reasonable doubt). At a minimum, evidence that does not make something "more likely than not," cannot be used to sustain a finding that a defendant possessed a firearm. Section 2D1.1(b)(1).

**Touch DNA**

It is well recognized in forensic DNA research that a person's DNA can being present on an item without them having any direct contact with the item. This is commonly referred to a "secondary transfer." A recent study published in the *Journal of Forensic Sciences,* arguably the premier American Journal on all forensic testing, in discussing a study of DNA transfer cautioned that:

> Observing a … major component (of a mixture) deduced to a single source together with a discriminating statistical calculation could lead investigators to believe that the source of the DNA profile was the individual who directly handled the object and was the perpetrator of the crime. If these results were presented during a trial as forensic evidence, they would be difficult to dispute. Data obtained from (this study) suggest(s) that individuals can have their DNA deposited on an item in sufficient quantities to be the only contributor or major contributor identified without ever coming into direct contact with the object.

Cale, et. al., *J Forensic Sci*, 2015 (copy attached).

The Cale study simply confirmed what was already shown in substantial published research. In a meta-study surveying all secondary transfer research published in 2013, the author provided a long list of conclusions that could not be drawn from a finding of a person's profile in a mixture on an item. This included that " (i)t is not possible to use the amount of DNA recovered from an item of interest to inform whether the DNA was deposited by direct contact or indirect transfer," Georgina Meakin, Allan Jamieson, *Forensic Science International: Genetics 7* (2013) 434-443. (Copy attached).

**The Opinions of Shawn O'Toole**

Mr. O'Toole is the Denver Crime Lab forensic scientist who did the analysis in this case. In an interview conducted October 25, 2017, Mr. O'Toole informed counsel of the following:

1. Even though a profile consistent with the defendant's profile was on the one gun, at least two other persons' profiles were also present.

2. Mr. O'Toole could not say whether the defendant's DNA got onto the gun by a primary or secondary transfer. He could not say whether one method of transfer was more likely than the other to have occurred.

3. The fact that there was more of the defendant's DNA present, as noted in the Meakin article, did not make it more likely than not that he directly deposited the DNA.

4. There is no way to establish when DNA was transferred to an item. The DNA found on the guns in this case could have been placed their years before.

Mr. Castro-Cruz contends the Government has not met its initial burden because it has failed to establish a connection between the weapon and the Defendant. Specifically, the Government has failed to show possession of the firearm by Mr. Castro-Cruz. Further, the Government has failed to show that any possession of a weapon was reasonably foreseeable by him.

Mr. Castro-Cruz acknowledges that the Government need not prove actual possession of the weapon in order for this enhancement to apply, and that constructive possession is sufficient. However, Mr. Castro-Cruz contends that the Government has failed to show even constructive possession of the weapon by Mr. Castro-Cruz. Actual possession of a firearm exists when a person has direct physical control over a firearm at a given time. *United States v. Bowen*, 437 F.3d 1009, 1017 (10th Cir. 2006). Constructive possession exists when a person "knowingly holds the power and ability to exercise dominion and control over [a firearm.]" *United States v. Lopez*, 372 F.3d 1207, 1211 (10th Cir. 2004).

7

When a defendant has exclusive possession of a premises where a firearm is found, knowledge, dominion, and control can be inferred. *United States v. Avery*, 295 F.3d 1158, 1177 (10th Cir. 2002). However, when "two or more people occupy a given space . . . the government is required to meet a higher burden in proving constructive possession." *United States v. Michel*, 446 F.3d 1122, 1128 (10th Cir. 2006). In joint occupancy cases, knowledge, dominion, and control may not be inferred simply because of a defendant's proximity to a firearm. Rather, the government must present evidence to show some connection or nexus between the defendant and the firearm. *Michel*, 446 F.3d at 1128.

In the case of *United States v. Colonna*, 360 F.3d 1169, 1179 (10th Cir. 2004), the Court held that knowledge and access to a firearm are required to prove that a defendant knowingly held the power to exercise dominion and control over a firearm. Proximity to a firearm alone is insufficient to establish dominion and control over a firearm in a joint occupancy case. *United States v. Hishaw*, 235 F.3d 565, 572 (10th Cir. 2000), citing *United States v. Reece*, 86 F.3d 994, 996 (10th Cir. 1996). In the present case, Mr. Castro-Cruz was in Mexico during the execution of the search warrant on May 7, 2014, so it is undisputed that Mr. Castro-Cruz was not in physical possession of the firearm when the search warrant was executed. Moreover, in this matter investigators identified various co-defendants of Mr. Castro-Cruz who were present at or traveling to and from the 9151 Cypress residence. Any of these (and probably other) individuals could have been responsible for the firearms the agents discovered at the Cypress location.

The Defense is unaware of any evidence identifying Defendant Castro-Cruz's fingerprints as any prints that may have been found on the four firearms recovered at 9151 Cyprus Drive. According to the government's disclosures in this matter, investigators apparently

submitted 57 items of physical evidence to the FBI for fingerprint analysis. It does not appear that any of these 57 items were a firearm.

The absence of fingerprints aside, there is no other evidence Defendant Castro-Cruz ever saw or handled the weapon at issue. The Government's reliance that Mr. Castro-Cruz's DNA was found on the weapon must fail because it is undisputed there is no way to determine how long that has been there, how it got on the weapon, who put it there or that it proves that he ever seen or touched the weapon/gun. Further, there is no evidence that Mr. Castro-Cruz ever knew of the existence of, or use of, a weapon in connection with drug dealing. None of the surveillance videos showed the presence of a weapon or even Mr. Castro-Cruz present at this address. None of the purchasers of drugs mentioned anything about the possession of a weapon. Therefore, nothing in the offense conduct would allow the Court to infer that the weapon found at a residence eight months after his departure was reasonably foreseeable to Mr. Castro-Cruz.

Because the Government has not met its initial burden required for the Court to impose this enhancement, Defendant Castro-Cruz requests the Court sustain this objection at sentencing and decline to apply a two-level enhancement pursuant to U.S.S.G. §2D1.1(b)(1).

### An Enhancement for Maintaining a Drug-Involved Premises Is Unavailable

The Defendant continues to oppose the PO's proposed two-level enhancement under U.S.S.G. §2D1.1(b)(12) on the grounds Defendant Castro-Cruz supposedly maintained a premises for the purpose of manufacturing or distributing controlled substances ("drug-involved premises"). PSIR, ¶35, p. 10. In its Addendum, the PO "doubles-down" on this drug-involved premises conclusion, without specifically responding to the Defense's Objections on this issue. Addendum, p. A-2.

Application Note 17 to §2D1.1 states "Among the factors the court should consider in determining whether the defendant 'maintained' the premises are (A) whether the defendant held a possessory interest in (e.g., owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises."   There is no information in discovery which would suggest that Mr. Castro-Cruz owned, leased, rented, or lived at 9151 Cypress.  In fact, the Defendant was in Mexico at the time investigators searched the Cypress apartment.

### The Prosecution Has Not Shown Defendant Played Any "Aggravating Role" in the Drug Conspiracy

At the sentencing hearing the Defense strenuously objects to any characterization of Marco Castro-Cruz as playing any "aggravating" or "leadership role" in the drug trafficking organization being pursued by the Government.   See U.S.S.G. §3B1.1(c).   The probation department maintains that Mr. Castro-Cruz should receive a 4-level upward adjustment, *see* ¶ 38, p. 12 of PSIR, because he was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive.  The Defendant disagrees.  There does not appear to be information in the discovery that suggests that Mr. Castro-Cruz recruited accomplices, was responsible for the planning and organizing of the conspiracy, claimed a larger share of the fruits of the crime, or controlled others in the conspiracy.

The Commentary to § 3B1.1 lists various considerations the sentencing court "should" take into account in assessing the defendant's leadership role, including

> "the . . . exercise of decision making authority, the nature of participation in the Commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity and the degree of control and authority exercised over others."

In considering these factors, the sentencing court should remain conscious of the fact that "[T]he gravamen of this enhancement is control, organization, and responsibility for the actions of other individuals."    *United States v. Albers*, 93 F.3d 1469, 1488 (10th Cir. 1996). Whether or not a defendant is an organizer, leader, manager or supervisor and whether the activity involved five or more participants or was otherwise extensive are viewed as factual questions to be resolved by the sentencing court.    *United States v. Fuentes-Moreno*, 895 F.2d 24 (1st Cir. 1990); and *United States v. Thomas*, 870 F.2d 174 (5th Cir. 1989).    The adjustment should not be based on a hunch or instincts, *United States v. Ortiz*, 966 F.2d 707 (1st Cir. 1992), and it should not be based on unsworn information in the presentence report.

The Plea Agreement itself contains no factual basis for any such a conclusory assertion. Indeed, as the prosecution must concede, the Defendant was absent from the United States from September 26, 2013, through September/October, 2014. This is a strong indicator Castro-Cruz was at most a minor player in the organization.  Otherwise, his absence would have been fatal or at a minimum very harmful to the organization's continued operation.  Yet, as the Government admits, that organization continued.

### The PO's Proposed Enhancement for a Pattern of Criminal Conduct Engaged In as a "Livelihood" Is Unwarranted

The government asserts in the Plea Agreement that a 2-level enhancement is warranted (while the PSIR suggests a 4-level enhancement) because Mr. Castro-Cruz should receive an aggravating role in the offense adjustment under §3B1.1 (discussed previously) and that he committed the offense as part of a pattern of criminal conduct engaged in as a livelihood. *See* ¶ 36, p. 11 of PSIR   The definitions of "pattern of criminal conduct" and "engaged in as a livelihood" are defined under §4B1.3.  "Pattern of criminal conduct means "planned criminal

acts occurring over a substantial period of time.  Such acts may involve a single course of conduct or independent offenses."

In this case Mr. Castro-Cruz is charged in a conspiracy which spans from October 1, 2012, through October 20, 2014.  In addition, Mr. Castro-Cruz was deported from the United States following his arrest on August 23, 2013, and remained in Mexico.  This "period of time" does not appear to rise to the level of "substantial period of time as required by the Application Note."

"Engaged in as a livelihood" means that (A) the defendant derived income from the pattern of criminal conduct that in any twelve-month period exceeded 2,000 times the then existing hourly minimum wage under federal law; and (B) the totality of circumstances shows that such criminal conduct was the defendant's primary occupation in that twelve-month period. The discovery does not reflect how much Mr. Castro-Cruz earned during a twelve-month period of time to warrant this adjustment

In its Addendum, the PO claims it now agrees with the Government's position that an additional upward two-level adjustment in sentencing is warranted because Defendant Castro-Cruz supposedly engaged in criminal conduct "as a livelihood," pursuant to U.S.S.G. §2D1.1(b)(15)(E).  Addendum, p. 1.  However, the Defendant has pleaded guilty to only two offenses:  one controlled substance violation, and one money-laundering offense.  And the government can point to only one prior conviction some *twelve years ago* which (as discussed below) itself should not qualify as a sentencing-enhancement factor.

Further, the "criminal livelihood" adjustment of §2D1.1(b)(15)(E) is available only where an "aggravating role" adjustment is established.  As we have shown above, the "aggravating

role" or leadership adjustment is unwarranted here. Hence, the "criminal livelihood" also is unavailable to the prosecution in its attempt to "pile on" here.

There simply is an inadequate basis for any "criminal livelihood" enhancement here.

## Request for Statutory Sentence

On January 12, 2005, the Supreme Court ruled that its Sixth Amendment holding in *Blakely v. Washington*, 124 S. Ct. 2531 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000) applies to the Federal Sentencing Guidelines. *United States v. Booker*, 125 S. Ct. 738, 756 (2005). The Court further found those provisions of the federal Sentencing Reform Act of 1984 that make the Guidelines mandatory, 18 U.S.C. § 3553(b)(1) or which rely upon the Guideline's mandatory nature, 18 U.S.C. § 3742(e), incompatible with its Sixth Amendment holding. *Booker*, 125 S. Ct. at 756. Accordingly, the Court severed and excised those provisions, "mak[ing] the Guidelines effectively advisory." *Id*. at 757.

Instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act, as revised by *Booker*,

> requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. § 3553(a)(4) (Supp.2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a).

*Booker*, 125 S. Ct. at 757. Thus, under *Booker*, sentencing courts must treat the guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. § 3553(a).

The primary directive in Section 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." Section 3553(a)(2) states that such purposes are:

> (A) to reflect the seriousness of the offense, to promote respect for

the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, § 3553(a) further directs sentencing courts to consider the following factors:

1) "the nature and circumstances of the offense and the history and characteristics of the defendant" (§ 3553(a)(1);

2) "the kinds of sentences available" (§ 3553(a)(3);

3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct (§3553(a)(6); and

4) "the need to provide restitution to any victims of the offense." (§ 3553(a)(7)).

Other statutory sections also give the district court direction in sentencing. Under 18 U.S.C. § 3582, imposition of a term of imprisonment is subject to the following limitation: "in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to "recogniz[e] that imprisonment is *not* an appropriate means of promoting correction and rehabilitation"" (emphasis added).

Under 18 U.S.C. § 3661, "*no limitation* shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added). This statutory language certainly overrides the (now-advisory) policy statements in Part H of the sentencing guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions,

14

drug or alcohol dependence, and lack of guidance as a youth. *See* U.S.S.G. § 5H1. *See* also *United States v. Nellum*, 2005 WL 300073, 2005 U.S. Dist. LEXIS 1568 (N.D. Ind. Feb. 3, 2005) (Simon, J.) (taking into account fact that defendant, who was 57 at sentencing, would upon his release from prison have a very low likelihood of recidivism since recidivism reduces with age; citing Report of the U.S. Sentencing Commission, Measuring Recidivism: the Criminal History Computation of the Federal Sentencing Guidelines, May 2004); *United States v. Naylor*, 359 F. Supp. 2d 521, (W.D. Va. 2005) (Jones, J.) (concluding that sentence below career offender guideline range was reasonable in part because of defendant's youth when he committed his predicate offenses – he was 17 – and noting that in *Roper v. Simmons*, 125 S. Ct. 1183, 1194-96 (2005), the Supreme Court found significant differences in moral responsibility for crime between adults and juveniles).

The directives of *Booker* and § 3553(a) make clear that courts may no longer uncritically apply the guidelines. Such an approach would be

> "inconsistent with the holdings of the merits majority in *Booker*, rejecting mandatory guideline sentences based on judicial fact-finding, and the remedial majority in *Booker*, directing courts to consider all of the § 3353(a) factors, many of which the guidelines either reject or ignore." *United States v. Ranum*, 353 F. Supp. 2d 984,985-86 (E.D. Wisc. Jan. 19, 2005) (Adelman, J.).

As another district court judge has correctly observed, any approach which automatically gives "heavy" weight to the guideline range "comes perilously close to the mandatory regime found to be constitutionally infirm in Booker." *United States v. Jaber*, 362 F. Supp. 2d 365, (D. Mass. 2005) (Gertner, J.). *See* also *United States v. Ameline*, 400 F.3d 646, 655-56 (9th Cir. Feb. 9, 2005) (advisory guideline range is "only one of many factors that a sentencing judge must consider in determining an appropriate individualized sentence"), reh'g en banc granted, 401 F.3d 1007 (9thCir. 2005).

Justice Scalia explains the point well in his dissent from Booker's remedial holding:

> Thus, logic compels the conclusion that the sentencing judge, after considering the recited factors (including the guidelines), has full discretion, as full as what he possessed before the Act was passed, to sentence anywhere within the statutory range. If the majority thought otherwise – if it thought the Guidelines not only had to be 'considered' (as the amputated statute requires) but had generally to be followed – its opinion would surely say so.

*Booker*, 125 S. Ct. at 791 (Scalia, J., dissenting in part). Likewise, if the remedial majority thought the guidelines had to be given "heavy weight," its opinion would have said so. The remedial majority clearly understood that giving any special weight to the guideline range relative to the other Section 3553(a) factors would violate the Sixth Amendment.

In sum, in every case, a sentencing court must now consider all of the §3553(a) factors, not just the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing. And where the guidelines conflict with other sentencing factors set forth in § 3553(a), these statutory sentencing factors should generally trump the guidelines. *See United States v. Denardi*, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J, concurring in part, dissenting in part) (arguing that since § 3553(a) requires sentence be no greater than necessary to meet four purposes of sentencing, imposition of sentence greater than necessary to meet those purposes violates statute and is reversible, even if within guideline range).

## Application of the Statutory Sentencing Factors

## to the Facts of this Case

In the present case, the following factors must be considered when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing:

**1. The Nature and Circumstances of the Offense and the History and Characteristics of the Offender**

  **(a) Nature and Circumstances of Offense**

   In this instance, admittedly Mr. Castro-Cruz was involved in the distribution of heroine. However, he never employed violence in any of his illegal activities. Defendant Marco-Castro Cruz is a 38 year old Mexican citizen and father of two minor children, a daughter, Cassandra age 4, and son, Jaciel age 5, both of whom currently reside in Mexico.  Defendant has taken responsibility and admitted to the offense conduct  as alleged in Count 1 of the Indictment arising out of District of Wyoming,   a violation of 21 USC §846,841(a)(1) and (b)(1)(C), Conspiracy to Distribute Heroin Resulting in Death.   Unfortunately, this offense of conviction resulted in the unintended death of Kaleb Skog in Laramie, Wyoming.   As the recommendation in Defendant's Presentence Report (PSR) directly acknowledges however, the instant offense was not violent and Defendant did not directly cause the victim's death.  In short, this was a very unfortunate and unintended result

  **(b) History and Characteristics of Mr. Castro-Cruz**

   As noted in the presentence report, Mr. Castro-Cruz is generally a law abiding citizen except for a prior drug related and traffic charges and the present conspiracy. After obtaining a 6th grade level of education, he left school to began working. While living in the United States, the defendant had the following jobs: worked in fields, worked in a slaughterhouse and a pig farm somewhere in the Carolinas, picked tomatoes in California, painting, carpentry, mowed lawns, and assisted a mechanic. While in Mexico, the defendant primarily did agricultural work such as planting corn.  To Mr. Castro-Cruz's credit, there is nothing in his background to indicate that he is a violent person and used firearms connected with any of his illegal acts. Mr.

17

Castro-Cruz was a person who dealt in a illegal substance, but never resorted or employed violence in his dealings. Upon release from prison, he plans to live with his spouse, Ms. Espinosa Sagaster and their daughter in Sinaloa.

Mr. Castro-Cruz has committed a serious offense for which he has accepted full responsibility. He is aware of the consequences he faces as a result. The issues that have plagued him in this case are "taking the fall" and comprehending the federal sentencing scheme. He acknowledges his involvement, admits his guilt, and wants to be sentenced in a way that correlates to his true involvement and role rather than based on mischaracterizations of him.

**2. The Need for the Sentence Imposed To Promote Certain Statutory Objectives:**

**(A) to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense**

Twenty years is "sufficient" for a young father who has never been to prison. Mr. Castro-Cruz has never been sentenced to prison. In fact, the only custodial sentence that he has ever received was a six month sentence handed down *after* the offense conduct in Arizona that occurred in 2000.  As several courts around the country have recognized, the sentencing goals of deterrence and just punishment can be served by a sentence that is significantly below guidelines if the defendant has never served much time.

In *United States v. Qualls*, the defendant was a career offender in a drug trafficking case who had received prison sentences of 14 months and 20 months in prior drug trafficking cases. 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005). He was considered to be "in the second lowest tier" of a 150-kilogram cocaine conspiracy, "with relevant conduct of 3.5 to 5 kg of cocaine." *Id.* at 875. The court justified subtracting 28 months from his guidelines4 by explaining, among other things, that:

18

> [i]t is appropriate for a court, when considering the type of sentence necessary to protect the public and deter future misconduct, to note the length of any previous sentences imposed. Generally, **a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration** than is necessary to deter a defendant who has already served serious time yet continues to re-offend.

*Id.* at 877 (emphasis added). Because his guidelines recommended a sentence "nearly 10 times higher than any previous, unrelated sentence," such a sentence "was greater than necessary." *Id.*

In *United States v. Mishoe*, the defendant was arrested while in possession of approximately 300 vials of crack cocaine. 241 F.3d 214, 215 (2d Cir. 2001). He had three prior drug felony convictions, where he had been sentenced to indeterminate terms of two to four years, 18 months to three years, and 30 months to five years. *Id.* at 216. The Second Circuit vacated a sentence, but explained that the district court would be permitted to depart downwards on remand for a variety of reasons, including the ratio between his prior sentences and the guidelines recommendation. *Id.* at 219. The Second Circuit explained that:

> a major reason for imposing an especially long sentence upon those who have committed prior offenses is to achieve a deterrent effect that the prior punishments failed to achieve. That reason requires an appropriate relationship between the sentence for the current offense and the sentences, particularly the times served, for the prior offenses. If, for example, a defendant twice served five or six years and thereafter committed another serious offense, a current sentence might not have an adequate deterrent effect unless it was substantial, perhaps fifteen or twenty years. Conversely, **if a defendant served no time or only a few months for the prior offenses, a sentence of even three or five years for the current offense might be expected to have the requisite deterrent effect**.

*Id.* at 220 (emphasis added). *See also United States v. Baker*, 445 F.3d 987, 992 (7th Cir. 2006) (upholding 21-month departure in pornography-distribution case, based on considerations of "just punishment and adequate deterrence," because "a prison term would mean more to Mr. Baker than to a defendant who previously had been imprisoned" (citations omitted)). Under

19

the persuasive reasoning of the courts quoted above, a twenty year sentence may well be sufficient to fulfill the goals of 18 U.S.C. § 3553(a)(2). Any more is a waste.

There is no doubt in Mr. Castro-Cruz mind that what he did was wrong and against the law. However, he has vowed to never put himself in a position where there is even the possibility he may have to go to jail. If Mr. Castro-Cruz is given a prison sentence of 20 years with credit for time served, he would be given a chance by the Court to establish a productive and law abiding life style upon his release while a still being middle aged man. Any longer of a sentence would serve no purpose except to institutionalize Mr. Castro-Cruz and make it extremely difficult for him to attempt to re-enter society and become a productive member of society.

**(B) to afford adequate deterrence to criminal conduct**

A 20 year prison sentence does afford adequate deterrence to future criminal conduct by Mr. Castro-Cruz. This is a significant amount of incarceration that will deter Mr. Castro-Cruz from repeating his mistakes, but will also send a message to others tempted to follow in Mr. Castro-Cruz's lifestyle that they run a significant risk of a lengthy period of incarceration.

**(C) to protect the public from further crimes of the defendant**

A significant prison sentence would be a sufficient safeguard for the public. Mr. Castro-Cruz is not a violent person, there are no weapons involved and he is not a danger to anyone if he is not selling drugs. It is anticipated that supervised release following a prison sentence would carefully monitor and supervisor Mr. Castro-Cruz to protect the public from any criminal behavior or relapse on his part.

**(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner**

The best method for providing Mr. Castro-Cruz with vocational training and substance abuse treatment will be the drug program and educational opportunities that he can participate in while in prison. Mr. Castro-Cruz is not in need of punishment or separation from society that comes with a thirty year sentence; he is in need of education and treatment. Mr. Castro-Cruz is in need of gaining the life skill necessary to allow him to become a productive member of society.

**3. The Kinds of Sentences Available**

In *Booker*, the Supreme Court severed and excised 18 U.S.C. §3553(b), the portion of the federal sentencing statute that made it mandatory for courts to sentence within a particular sentencing guidelines range. *Booker*, 125 S. Ct. at 756. This renders the sentencing guidelines advisory. *Id*. Under 18 U.S.C. §3561, this Court does have the discretion to impose a prison sentence that is less then what is called for under the sentencing guidelines, but due to the mandatory minimum, not less then 20 years.

Defendant's 20 years to 23 years imprisonment as contained in his plea agreement results in a bottom end sentence of imprisonment which is actually higher than the presumptive guideline range of 210-262 months or 17.5 years at the low end, this the result from application of a minimum mandatory of 240 months (20 years) pursuant to a 21 USC §841(b)(1)(C) conviction. The entirety of Defendant's prior criminal history calculations are not anticipated to exceed more than two criminal history points , at most. Further, the 2 potential criminal history points could only result from a prior drug conviction involving less than 7 total grams of controlled substance nearly twelve years ago.

21

The US Probation has made a sentencing recommendation of 360 months (to run concurrent with the 324 month sentence recommended in 14CR00144-CMA-4.) This is based upon purported specific offense characteristics applied by Probation in Defendant's PSR which include allegedly possessing a firearm, maintaining a premises for the purpose of manufacturing or distributing a controlled substance and for functioning as a leader. These particular specific offense characteristics notably are not readily evident even within the Probation Office's Offense Conduct and Additional Information statements contained the Defendant's PSR. Rather, what is provided is a general description of a Sinoloan drug distribution network and how it is alleged to generally operate with regard to drug distribution.

**4. The Sentencing Range Established by the Sentencing Commission**

The probation department has calculated that Mr. Castro-Cruz would have a total offense level of 42, criminal histroy category II, resulting in a guideline provision range of a sentence of 360 months of incarceration to life. In this instance, the guideline range does not adequately reflect the Mr. Castro-Cruz's conduct or personal history. Specifically, it fails to take into account the young age of Mr. Castro-Cruz, his personal background and his lack of violence. Secondly, the guideline fail to take into consideration many of the mitigating factors listed below in this memorandum. As such, none of the issues concerning Mr. Castro-Cruz on an individual level are taken into consideration by the sentencing guidelines.

**5. The Need To Avoid Unwarranted Disparities**

The Presentence Report sets forth the kinds of sentences available at Part D. Sentencing Options on pages 29 through 32. The Court may look to co-defendant disparity when fashioning a reasonable sentence. *E.g., United States v. Frias*, 521 F. 3d 229 (2d Cir. 2008) (similarities and

differences among co-defendants may be considered when imposing a sentence") (quoting *United States v. Willis*, 476 F.3d 103, 110 (2d Cir. 2007), *abrogated on other grounds*). After *Gall [v. United States, 552 U.S. 38 (2007)]*, "it is clear that codefendant disparity is not a per se 'improper' factor").

This case involves 23 co-defendants, the majority whom have been sentenced. Mr. Castro-Cruz anticipates that the government will advocate for a sentence of 23 years. The Probation Officer recommends a sentence of 30 years. The stipulated sentencing range in the 11(c)(1)(C) plea agreement itself (20 - 23 years) is a harsh sentence.

The sentences suggested by the government and the Probation Office would create sentencing disparities between certain co-defendants. He did not cooperate. He is not the only defendant who elected not to cooperate. He understands that defendants who cooperate may receive lesser sentences. *See United States v.Zapata,* 546 F.2d 1179 (10th Cir. 2008) ("a disparity among co-defendants is justified 'when sentences are dissimilar because of a plea bargain"). But here defendants who did not cooperate received lesser sentences, as well, notwithstanding their level of involvement in the offense.

As stated, arguably two others in this case were in a similar position to Mr. Castro-Cruz, that being Mr. Romero and Mr. Sepulveda. Despite the fact that both are considered on or at the same level as Mr. Castro-Cruz in their part of the conspiracy, neither of them were charged with the gun or saddled with all the guideline enhancments as Mr. Castro-Cruz. Despite the fact that there is no evidence that Mr. Castro-Cruz ever used firearms, under the sentencing guideline calculations as contained in their Plea Agreement and Statement of Facts Relevant to Sentencing, both are facing a significant lighter prison sentence. This is an unwarranted disparity between Mr. Castro-Cruz and them and should be adjusted by the Court in giving Mr. Castro-Cruz a

prison sentence in line with what is estimated for his codefendants.

Defendant's PSR acknowledges that a variance may be warranted and if it were to be awarded, it would be appropriate for Mr. Castro-Cruz to receive a variance and concurrent sentence with his District of Colorado case close to, but higher than, that of two co-Defendant's in the District of Colorado case, Paul Rubio-Sepulveda and Juan Miguel Espinoza Romero. It appears as though co-Defendant Juan Miguel Espinoza-Romero also has a Fed.R.Crim.P 11(c)(1)(C) Plea Agreement before this Court , the sentencing recommendation contained therein being a term of imprisonment between 10-14 years. Co-Defendant Paul Rubio-Sepulveda also appears to have a plea agreement entered into, absent specific terms of incarceration being recommended although with a minimum mandatory of 10 years being acknowledged as being applicable.

Defendant Castro-Cruz's plea agreement recommendation of 20-23 year of incarceration, concurrent with his District of Colorado case, more than adequately takes into account not only his offense conduct in Colorado by comparison to that of his co-Defendant's but also adequately reflects the additional count of conviction arising out of the District of Wyoming making the concurrent sentencing recommendation of 20-23 years imprisonment appropriate.   In the event Defendant Juan Miguel Espinoza-Romero were to receive  a  10-14 years sentence, but Defendant Castro-Cruz were to receive a concurrent term of 30 years imprisonment as recommended in Defendant's PSR, the result would a sentence which fails to comply with the requirements of **18 USC §3553(a)(6) to avoid such disparities.**

## Proposed "Statement of Reasons Pursuant to 18 U.S.C. § 3553(c)"
## for sentence below guideline range.

There are a number of reasons to sentence Mr. Castro-Cruz to prison sentence that is

considerably less then the guideline sentence estimated in the Presentence Report. One such reason, is that Mr. Castro-Cruz's criminal history over-represents the seriousness of his past criminal conduct. In the PSR calculation, Mr. Castro-Cruz received 2 criminal history points for sale/transport of narcotic drug conviction when he was 21 years old. Mr. Castro-Cruz was very young in the 2000 incident. *See*, ¶ 89 of PSIR.

In *U.S. v. Hammond*, 240 F. Supp.2d 872 (E.D. Wisc. 2003) the court, in granting a departure from criminal history category III to II, concluded that the defendnat's criminal history was overstated upon consideration of (1) the age of the priors, (2) the defendant's age at time of the priors, (3) whether drug and alcohol use were involved in the priors, (4) the circumstances of the prior offenses , (5) the length of the prior sentences, (6) the circumstances of the defendant's life at the time of the priors, and (7) the proximity of the priors to the instant offense. In Mr. Castro-Cruz's case, he was only 21 years old at the time of the prior, the prior took place 17 1/2 years ago,  the length of the sentences was relatively minor (Sentence suspended; 30 months Probation with conditions including: Six months jail (credit for three months served)) *See also U.S. v. Shoupe*, 988 F.2d 440, 447 (3d Cir. 1993) ; a court may consider defendant's age and immaturity when priors committed in determining that criminal history and *U.S. v. Bowser*, 941 F.2d 1019, 1024 (10th Cir. 1991) ; the defendant's age and close proximity in time between prior criminal acts provided proper basis to depart downward from career offender category. Given the non-violent nature of Mr. Castro-Cruz's offenses as well as the above-listed factors, a strict application of the guidelines to his case overrepresents his criminal history and likelihood to re-offend. Hence, Mr. Castro-Cruz takes the position that there is an over-representation of his criminal history and he should be a criminal history category I.

1.    U.S.S.G. § 4A1.3 provides that "[t]here may be cases where the court concludes

that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes." Departures under section 4A1.3 are a subset of departures under section 5K2.0. *United States v. Collins*, 122 F.3d 1297, 1303 (10th Cir. 1997); *United States v. Maldonado-Campos*, 920 F.2d 714, 719 n.2 (10th Cir. 1990). The overstatement of a defendant's criminal history is a "mitigating factor" within the meaning of U.S.S.G. § 5K2.0. *Collins*, 122 F.3d at 1306. Based on this standard, Mr. Castro-Cruz asserts that treating him as a category II substantially over-represents the seriousness of his prior criminal history.

2.    Mr. Castro-Cruz admits that his criminal history is nothing to be proud of; however, a close and careful review of the criminal history reveals that it is not as bad as it may first appear. A number of considerations show that a criminal history category II over-represents the seriousness of Mr. Castro-Cruz 's criminal history.

a.    The Defendant has a criminal history category of II based on 2 criminal history points. The Probation officer's conclusion that Mr. Castro-Cruz is a CHC II rests on only one prior conviction:

| Date | Offense | Conviction | ¶ of PSI | Points Added |
|------|---------|-----------|----------|--------------|
| 07/13/2000 | Sale or Transport of Narcotic Drug | Felony | ¶ 89 of PSI | 2 |

Mr. Castro-Cruz first notes that two criminal history points are attributable to an Arizona conviction in case no. 2000CR014188. Mr. Castro-Cruz does not mean to denigrate the seriousness of this offense but to be categorized, as a criminal history II based soley on this offense is draconian.

b.    Further mitigation of Mr. Castro-Cruz 's criminal history is demonstrated

by the timing of his prior criminal conduct. With the exception of one traffic offense, Mr. Castro-Cruz's only law enforcement contact was when he was 21 years old. In the succeeding 17 ½ years, Mr. Castro-Cruz has not committed any other offenses.

   c.  To add insult to injury, Mr. Castro-Cruz singular conviction aggravates his sentence drastically. While this is technically not double counting, it is tantamount to the same. It has what counsel terms as the *trifecta effec*t – punishment when you commit the offense (state felony offense), punishment as a sentence enhancer (21USC 851) increasing the mandatory minimum from 10 to 20 years in federal court (for state felony offense) and then further punishment in the criminal history category in federal court (for state felony offense).

   3.  Based on all of the above considerations, a criminal history category II over-represents the seriousness of Mr. Castro-Cruz 's criminal history. Accordingly, Mr. Castro-Cruz requests that the Court depart down one criminal history category and impose a sentence based on criminal history category I.

   A second factor in mitigation of Mr. Castro-Cruz's sentence is his parental responsibility to his children. As noted in the PSR, Mr. Castro-Cruz has two children, a daughter with his wife, Ms. Evangelina Espinosa Sagaste (age 4), and a son (age 5) from a prior relationship, both of which he provided financial child support before his arrest in this matter. Incarcerating Mr. Castro-Cruz for an extraordinary amount of time would result in an extraordinary effect on these innocent family members. It is important that Mr. Castro-Cruz be able to not only financially support his children, but that he be able to provide the appropriate parental guidance to them.

   Another issue in mitigation of Mr. Castro-Cruz's sentence is the conduct of law enforcement in conducting the investigation of Mr. Castro-Cruz. Specifically, Mr. Castro-Cruz

was traveling home to Mexico, having withdrawn from the conspiracy and responsibilities taken over by someone else, when he was arrested on August 23, 2013 and subsequently deported on September 26, 2013. Mr. Castro-Cruz was not in the United States from September 26, 2013 to Septmeber/October, 2014. While the government wants to attribute conduct to Mr. Castro-Cruz after his withdrawal and absence from not only the conspiracy but the United States, it should be disallowed, as it is only mere theory that this was some sort of revolving door. That's easy to theorize in hindsight, but Mr. Castro-Cruz was merely seeking employment when he came to the U.S. to earn money for his family while engaging in many different types of employment. *See*, ¶¶¶ 106, 107 & 116 of PSIR.

A further factor in favor of mitigation of Mr. Castro-Cruz's sentence is that other similarly situated with Mr. Castro-Cruz were not subject to the same severity of the charges or guidelines enhancements. As discussed *supra* the applicable criminal history is such that the proposed guideline sentence, which places Defendant on a level with offenders who have more serious criminal histories, but face similar sentences, results in unwarranted sentence disparity. A CHC I sentence is sufficient but not greater than necessary to comply with the objectives of §3553(a)(2).

Mr. Castro-Cruz maintains that a sentence based on a criminal history category of I appropriately considers the guidelines and, more importantly, avoids unwarranted disparities. To sentence Mr. Castro-Cruz as CHC II based upon this conviction would result in an unjust disparity and result in an unreasonable sentence. This is all the more reason the Court should deviate from the guideline sentence and impose an appropriate sentence based on the facts and circumstances of this case and this defendant.

Secondly, this court should be hesitant, before sentencing Mr. Castro-Cruz so severely that it destroys all hope and takes away all possibility of a useful life for Mr. Castro-Cruz. Punishment should not be more severe then necessary to satisfy the goals of punishment, see 18 U.S.C. 3553(a)(2)(A-D). Also *see United States v. Carvajal*, WL 476125 (S.D.N.Y. 2005). In *Carvajal*, the court applied 18 U.S.C. 3553(a) and sentenced Mr. Carvajal to 168 months, rather then the 262-327 months prescribed by the sentencing guidelines. The court based its decision on the factors as found in 18 U.S.C. 3553(a), as well as its recognition that to impose such a sentence on Mr. Carvajal would cause him to lose all hope and never become rehabilitated, which is one of the goals of sentencing. This is equally true in Mr. Castro-Cruz's case. If the court imposes 30 years on Mr. Castro-Cruz, it would be such an excessive sentence that would destroy all of Mr. Castro-Cruz's hope and take away all possibility of a useful life. It would crush his spirit and destroy his will to become a productive member of society.  There simply is no reason to incarcerate Mr. Castro-Cruz longer then 20 years and a multitude of reasons to sentence him to 20 years and allow him to become a productive member of society while he is still a middle age man. As noted above, Mr. Castro-Cruz is a non-violent person and has a relatively minor criminal history. He is a family man with family responsibilities. His personal background is one of agriculture and farming. For whatever reason, he is being treated in an unequal fashion as compared to those with equal involvement in this case. Given the nature of the crime itself, the relative involvement by Mr. Castro-Cruz and his lack of violence, a 20 year prison sentence best fits this case and is appropriate for Mr. Castro-Cruz.

## A VARIANCE TO THE BOTTOM OF THE STIPULTED RANGE PURSUANT TO THE RULE 11(c)(1)(C) PLEA AGREEMENT IS WARRANTED

Based on the foregoing, a variance to the bottom of the stipulated range pursuant to the parties' Rule 11(c)(1)(C) Plea Agreement is warranted and appropriate. Even when the Sentencing Guidelines were mandatory, sentencing courts were to treat those before them as individuals. *See Koon v. United States,* 518 U.S. 81, 113 (1996) ("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.") Subsequent case law and the command of 18 U.S.C. § 3553 to impose a sentence that is "sufficient, but not greater than necessary," provide this Court with greater latitude to impose a sentence that fits the crime and the person before it. Marco Castro-Cruz, therefore, respectfully requests this Court accept the Plea Agreement, exercise its discretion and grant a downward variance to the bottom of the parties' stipulated range in the Plea Agreement.

## 18 USC §3553(b)(1)

In the event the Court were to apply any or all of the specific offense characteristics recommended  by the Defendant's PSR, and above Defendant's otherwise applicable the Base Offense Level of 38, a variance downward to 20-23 years of imprisonment concurrent with 1:14CR00144-CMA-4  would nevertheless be permissible.

Application of guidelines in imposing a sentence ---

    (1) In general – Except as otherwise provided in paragraph 2, the court shall impose a sentence of the kind and within the range referred to in subsection (a)(4) unless the court finds there exists an aggravating or mitigating circumstance of a kind, or to a degree, not

<u>adequately taken into consideration by the sentencing commission in formulating the guidelines that should result in a sentence different than that described.</u>

Here, Defendant Castro-Cruz was initially indicted in the District of Wyoming on the above-noted drug related charges and prior to indictment in the District of Colorado. Following his arrest in Colorado, however, Defendant was subsequently detained in Colorado pending the Colorado charges, the result being the Wyoming case being placed onto hold. No party, whether Defendant, the United States, nor U.S. Probation appear to contend that the charges against Defendant Castro-Cruz in both the Districts of Wyoming and Colorado appear to comprise the same overall drug conspiracy. Notably, the US Probation office further notes in Defendant's PSR that the instant drug distribution conspiracy offense "is the same drug distribution conspiracy charged in Case Number 1:14CR00144 wherein 23 defendants, including the defendant, are charged." The obvious consequences to Defendant Castro-Cruz in facing two separate indictments in two separate jurisdictions pertaining to the same drug conspiracy is obvious, a conviction in one jurisdiction could result in Defendant being subjected to enhanced potential penalties in the other, not to mention well a higher criminal history computation.

Further, Defendant Castro-Cruz has consented to a **Rule 20 Consent to Transfer of Case for Plea and Sentence**. The result of this consent made by Defendant is that the District of Wyoming now need not bring Defendant Castro-Cruz to the District of Wyoming for further criminal proceedings resulting from a common conspiracy in Colorado. This result of course is avoided by the proposed plea agreement, which benefit's the District of Wyoming as it pertains to the anticipated time and expenses attendant to criminal federal proceedings.

## CONCLUSION

Based on the foregoing argument and citations of authority, Mr. Castro-Cruz urges this Court at sentencing to adjust the volume of drugs as more accurately identified above. Defendant further urges the Court to reject the Government's numerous arguments for various upward adjustments and sentence enhancement to the Defendant's sentence based on the following factors:   possessing a firearm; maintaining a drug-involved premises; being an organizer or leader of the criminal activity; engaging in a pattern of criminal activity as a livelihood; and having the prior Arizona criminal conviction.

Instead, the Court should sentence Defendant Castro-Cruz to twenty years imprisonment pursuant to the Plea Agreement.  Such a sentence is reasonable and just, and would constitute a period equivalent to half of the Defendant's entire lifetime on this planet.

This sentence of twenty years should be reduced for time served, followed by an appropriate period of supervision.  Such a sentence is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. All the factors stated above, clearly mitigate and outweigh any rigid adherence to the now advisory guidelines allowing this Court to sentence Mr. Castro-Cruz to 20 years concurrent.. Accordingly, Mr. Castro-Cruz requests the Court credit him for the time spent in custody from October 14, 2014 to February 5, 2018 in order to effectuat the intent of the plea, which would be part of the bargained for benefit.

Dated 22nd day of January, 2018.

Respectfully submitted,
LAW OFFICE OF BOSTON H. STANTON, JR.

s/Boston H. Stanton, Jr.
Boston H. Stanton, Jr.
P.O. Box 200507
Denver, CO 80220
(303) 377-2757 Telephone

(303) 394-0204 Telecopier
bostonhs@comcast.net
**ATTORNEY FOR MARCO CASTRO-CRUZ**


**CERTIFICATE OF SERVICE**

I hereby certify that on January 22, 2018, I electronically filed the foregoing **DEFENDANT MARCO CASTRO-CRUZ'S SENTENCING MEMORANDUM AND MOTION FOR NON-GUIDELINES SENTENCE** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

Guy Till guy.till@usdoj.gov
Barbara Skalla barbara.skalla@usdoj.gov


and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Marco Castro-Cruz
c/o FDC, Englewood, CO

s/Boston H. Stanton, Jr.
LAW OFFICE OF BOSTON H. STANTON, JR.